Jenna Dakroub, CA #350170
E: jdakroub@consumerattorneys.com
CONSUMER ATTORNEYS
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Hamidreza Rezaei*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| HAMIDREZA REZAEI,<br><br>Plaintiff,<br>vs.<br><br>STERLING INFOSYSTEMS, INC.,<br><br>Defendant. | Case No.: 8:24-cv-02122<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

## COMPLAINT

Hamidreza Rezaei ("Plaintiff" or "Mr. Rezaei") by and through his counsel brings the following Complaint against Sterling Infosystems, Inc. ("Defendant" or "Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. and California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785, *et. seq*., arising out of an employment background check report that Defendant published to Plaintiff's potential employer,

which falsely portrayed Plaintiff as having three active warrants, related to five misdemeanor charges and two ***felony*** charges.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA") and Cal. Civ. Code § 1785, *et seq*. (CCRAA).

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff had three active warrants, related to five misdemeanor charges and two ***felony*** charges. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with a crime in his life.

5. Plaintiff's employer terminated Plaintiff's employment after receiving an employment background check report from Defendant, which included the inaccurate criminal charges with active warrants, which do not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Los Angeles County, California regarding the active warrants prior to publishing Plaintiff's report to his employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their driver's license number and date of birth and even reside in a different part of the state from Plaintiff.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking to maintain their employment by prejudicing their employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA and CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, temporary loss of employment, wages, and benefits; possible loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life;

and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA and Cal. Civ. Code § 1785.14.

**PARTIES**

13. Hamidreza Rezaei ("Plaintiff" or "Mr. Rezaei") is a natural person residing in Trabuco Canyon, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal Civ. Code § 1785.3(b).

14. Defendant Sterling Infosystems, Inc. ("Defendant" or "Sterling") is a Delaware corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 6150 Oak Tree Blvd Ste 490, Independence, OH 44131.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) and Cal Civ. Code § 1785.3(d) because for monetary fees, it regularly

engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting criminal charges with active warrants that

belong to an unrelated consumer who has a different driver's license number and date of birth than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with AutoNation

40. In or around April 2024, Plaintiff applied for full-time employment as a Salesperson.

41. Upon applying to AutoNation, Plaintiff successfully completed two interviews and passed a drug test.

42. Shortly thereafter, AutoNation extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("consumer report.")

### Defendant Published an Inaccurate Background Check Report to AutoNation

43. AutoNation contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44. On or about June 27, 2024, AutoNation ordered a criminal background check on Plaintiff from Defendant.

45. On or about July 16, 2024, AutoNation allowed Plaintiff to start work while the background check was pending.

46. On or about July 30, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to AutoNation.

47. Within that consumer report, Defendant published inaccurate information about Plaintiff.

48. Specifically, Defendant's consumer report about Plaintiff included three grossly inaccurate and stigmatizing active warrants related to five misdemeanor charges and two ***felony*** charges from Los Angeles County, California, which appeared in the consumer report as follows:

**Data As Provided**

| | |
|---|---|
| Last Name | Rezaei |
| First Name | HAMIDREZA |
| Middle Name | Not Provided |
| SSN | XXX-XX-0337 |
| DOB | XXXX-03-27 |
| Race | Unknown |
| Gender | Unknown |
| Jurisdiction | CA-LOS ANGELES (207) |

**Verified Data**

Report requested on: 2024-06-27
Report completed on: 2024-07-29

| | |
|---|---|
| Case Number | 1LB00187 |
| File Date | 2021-03-02 |
| Court | Superior And Limited Jurisdiction Court |
| Last Name | REZAEI |
| First Name | HAMIDREZA |
| DOB | XXXX-03-27 |
| Case Type | Not Disposed |
| Case Level | Misdemeanor |
| Filed Date | 2020-06-09 |
| Additional Info | Warrant Date : 06/22/2023 |

**Charges**

| | |
|---|---|
| Violation Date | 2020-06-09 |
| Type | Misdemeanor |

Page 3 of 17

| | |
|---|---|
| Original Charge | DEALER FAIL TO DELIVER/ETC. CERTIFICATE/REGISTRATION |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Violation Date | 2020-06-09 |
| Type | Misdemeanor |
| Original Charge | EMPLOY OR FAIL TO REPORT UNLICENSED SALESPERSON |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Violation Date | 2020-06-09 |
| Type | Misdemeanor |
| Original Charge | FAIL TO ITEMIZE AMOUNT FINANCED ON CONTRACT |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Case Number | 0LB03447-02 |
| File Date | 2020-08-04 |
| Court | Superior And Limited Jurisdiction Court |
| Last Name | REZAEI |
| First Name | HAMIDREZA |
| DOB | XXXX-03-27 |
| Case Type | Not Disposed |
| Case Level | Misdemeanor |
| Filed Date | 2020-01-04 |
| Additional Info | , Warrant Date : 06/22/2023 |

**Charges**

| | |
|---|---|
| Violation Date | 2020-01-04 |
| Type | Misdemeanor |
| Original Charge | DEALER FAIL TO DELIVER/ETC. CERTIFICATE/REGISTRATION |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Violation Date | 2020-01-04 |
| Type | Misdemeanor |

| | |
|---|---|
| Original Charge | DEALER FAIL TO DELIVER/ETC. CERTIFICATE/REGISTRATION |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Case Number | NA115041-01 |
| File Date | 2022-06-23 |
| Court | Superior And Limited Jurisdiction Court |
| Last Name | REZAEI |
| First Name | HAMIDREZA |
| DOB | XXXX-03-27 |
| Case Type | Not Disposed |
| Case Level | Felony |
| Filed Date | 2018-05-23 |
| Additional Info | Warrant Date : 05/11/2023 |

**Charges**

| | |
|---|---|
| Violation Date | 2018-05-23 |
| Type | Felony |
| Original Charge | OBTAIN MONEY/ETC. BY FALSE PRETENSES (OVER $400) |
| Disposition | ACTIVE WARRANT |

| | |
|---|---|
| Violation Date | 2018-05-23 |
| Type | Felony |
| Original Charge | OBTAIN MONEY/ETC. BY FALSE PRETENSES (OVER $400) |
| Disposition | ACTIVE WARRANT |

49. The criminal records and active warrants reported by Defendant about Plaintiff to AutoNation ***do not*** belong to Plaintiff.

50. Plaintiff has never been charged with a crime in his life.

51. A cursory review of the widely available public court records confirms that the records belong to an unrelated male, Hamidreza Rezaei ("Charged Felon Rezaei").

52. Had Defendant actually consulted or obtained the widely available public court records regarding the three active warrants and criminal charges, it would have seen obvious discrepancies between Charged Felon Rezaei and Plaintiff.

53. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Charged Felon Rezaei include the following:

(a) Plaintiff's driver's license number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Charged Felon Rezaei.

(b) Plaintiff's date of birth, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Charged Felon Rezaei.

(c) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Charged Felon Rezaei.

54. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's employer.

55. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal active warrants and criminal charges belong to an unrelated individual with a different date of birth, a different Social Security Number, and a different driver's license number than Plaintiff.

56. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b) Cal. Civ. Code § 1785.14.

**AutoNation Terminates Plaintiff**

57. On or about August 2, 2024, Plaintiff received a termination letter from AutoNation as a direct result of criminal records and active warrants reported by Defendant.

58. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal charges of another, namely Charged Felon Rezaei, were published in the consumer report Defendant sold about Plaintiff to AutoNation.

59. Plaintiff contacted AutoNation and informed them that he is not Charged Felon Rezaei. Plaintiff explained that the serious criminal charges and active warrants of Charged Felon Rezaei do not belong to him.

60. Plaintiff was very panicked, confused, and concerned about the impact of Charged Felon Rezaei's serious criminal records reported on the subject consumer report – specifically, the impact of the same on his future.

61. Specifically, Defendant matched Plaintiff and Charged Felon Rezaei and published the criminal records of Charged Felon Rezaei onto the consumer report about Plaintiff and sold that report to Plaintiff's employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to AutoNation, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

62. On August 2, 2024, desperate to secure employment with AutoNation and riddled with worry over the far-reaching impacts of being confused with a charged felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via phone with Defendant.

63. Plaintiff identified himself and provided information to Defendant to support his dispute.

64. Plaintiff specifically disputed the criminal records of Charged Felon Rezaei.

65. Plaintiff specifically stated that the criminal records of Charged Felon Rezaei do not belong to Plaintiff.

66. Plaintiff specifically asked Defendant to investigate and delete Charged Felon Rezaei's criminal records from any consumer report about Plaintiff.

67. Shortly thereafter, Plaintiff received Defendant's correspondence, dated August 2, 2024, confirming that it had reinvestigated Plaintiff's dispute and removed the criminal records from the subject consumer report.

68. Defendant also communicated to Plaintiff that it had issued a corrected consumer report to AutoNation.

69. Plaintiff followed up with AutoNation and his employment was reinstated on August 5, 2024.

70. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, his coworkers and AutoNation management formed a negative opinion about Plaintiff.

71. Due to Defendant's unreasonable procedures in the first place, Plaintiff was unemployed from August 2, 2024, to August 5, 2024. Plaintiff also had to undergo new hire training again.

72. Furthermore, when Plaintiff returned to work, he had to explain what happened to about fifteen of his workers – five of which are part of upper management.

73. Adding insult to injury, many of his coworkers laughed at him and made jokes about what happened. Plaintiff was nothing short of mortified.

74. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75. As a result of Defendant's violations of the FCRA and CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, temporary loss of employment, wages, and benefits; possible loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

77. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

78. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

79. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

80. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

81. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, temporary loss of employment opportunities, wages, and benefits; possible loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

82. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory

damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Cal. Civ. Code § 1785.14 Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

84. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

85. Defendant is "consumer reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

86. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

87. At all times pertinent hereto, the above-mentioned employment report was "consumer report" as that term is defined by Cal. Civ. Code § 1785.3(c).

88. Defendant violated Cal. Civ. Code § 1785.14 by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information they published within the same.

89. As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, temporary loss of employment opportunities, wages, and benefits; possible loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

90. Defendant willfully violated Cal. Civ. Code § 1785.14 in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2). Alternatively, they were negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(1).

91. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d), § 1785.31(a)(1) and/or § 1785.31(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

ii. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

iii. Punitive damages pursuant to 15 U.S.C. § 1681n;

iv. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

v. Actual damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vi. Statutory damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vii. Punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2);

viii. Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(d);

ix. Actual damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

x. Statutory damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

xi. Punitive damages pursuant to Cal. Civ. Code § 1786.50(b);

xii. Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1786.50(a)(2);

xiii. Punitive damages to be determined at trial, for the sake of example and punishing defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294;

xiv. All pre-judgment and post-judgment interest as may be allowed under the law; and

xv. Any other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: September 30, 2024

*/s/ Jenna Dakroub*

Jenna Dakroub, CA #350170
E: jdakroub@consumerattorneys.com
**CONSUMER ATTORNEYS**
16130 Ventura Blvd., Suite 300
Encino, CA 91436
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Hamidreza Rezaei*